670 So.2d 119 (1996)
Balduino CORTES, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-220.
District Court of Appeal of Florida, Third District.
March 6, 1996.
Rehearing Denied April 10, 1996.
*120 Charles G. White, Miami, for appellant.
Robert A. Butterworth, Attorney General and Roberta G. Mandel, Assistant Attorney General, for appellee.
Before GERSTEN, GODERICH and GREEN, JJ.
PER CURIAM.
Balduino Cortes appeals his conviction and sentence for trafficking in cocaine. We reverse and remand for a new trial.
In February 1992, a confidential informant met with Detective Kelly Reid of the Miami Beach Police Department and said that he could arrange a drug deal through an acquaintance, Jon McMillin. McMillin provided the confidential informant with a telephone number which belonged to a person named Armando and his girlfriend, Amy Zakheim.
The confidential informant met Detective Reid a few days later and placed a controlled phone call from her office to the number given to the informant. Zakheim answered the call. She agreed to discuss the deal with Armando. The next day, the confidential informant met with Amy and Armando to discuss the purchase of 2-3 kilos of cocaine for $15,000. The transaction was set for February 6 on Miami Beach.
Detective Reid met with Zakheim, Cortes, the confidential informant, and McMillin as planned.[1] The confidential informant left the scene and the transaction was completed. Zakheim, Cortes, and McMillin were arrested.
Zakheim struck a deal with the State that would greatly reduce her punishment in return for her testimony at trial against Cortes.[2] Before Cortes's trial, Zakheim was arrested again for grand theft, uttering a forged instrument, and four counts of forgery. She was incarcerated for these crimes at the time of the Cortes trial; the Department of Corrections had also filed an affidavit of violation of community control.[3]
The State moved in limine before Zakheim's testimony to preclude any questions on the pending charges. The State argued that any questions about the pending charges would be an impermissible inquiry into an arrest without a conviction and, further, that Zakheim had no motivation to lie because she had already been sentenced for her part in the 1992 drug deal. The defense argued that the crimes of forgery and uttering false instruments went to truthfulness and that such questions would provide evidence of bias because Zakheim was awaiting prosecution. The defense further argued that since Zakheim had agreed to testify for the State and received in return an extremely lenient sentence, it would be reasonable for her to assume any help she could continue to provide to the State against Cortes would be useful in her current situation. The trial court granted the motion and Cortes was not allowed to cross-examine Zakheim in connection with the recent arrest.
The jury returned a verdict that convicted Cortes of trafficking and acquitted him of conspiracy. Immediately after Cortes was sentenced to a minimum mandatory 15 year sentence of incarceration, Zakheim was sentenced on the new charges. She was reinstated in community control, reenrolled in *121 the drug treatment program, and released from custody.
It was clear error for the trial court to prohibit cross-examination on the new substantive charges filed against the State's chief witness in order to show her possible bias, motive, or self-interest for her testimony. While defense witnesses may be impeached only by proof of convictions, it is well settled that "if a witness for the State were presently or recently under actual or threatened criminal charges or investigation leading to such criminal charges, a person against whom such witness testifies in a criminal case has an absolute right to bring those circumstances out on cross-examination." Breedlove v. State, 580 So.2d 605, 608 (Fla.1991) (emphasis supplied); Fulton v. State, 335 So.2d 280, 283-84 (Fla.1976) (quoting Morrell v. State, 297 So.2d 579, 580 (Fla. 1st DCA 1974)); see also Torres-Arboledo v. State, 524 So.2d 403, 408 (Fla.) ("When charges are pending against a prosecution witness at the time he testifies, the defense is entitled to bring this fact to the jury's attention to show bias, motive or self-interest."), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988); Williams v. State, 600 So.2d 509 (Fla. 3d DCA 1992) ("Any evidence tending to establish that a witness is appearing for the State for any reason other than to tell the truth should not be kept from the jury.").
Since this case must be remanded for a new trial, we briefly address one other point raised by Cortes in this appeal. Cortes complains that the trial court erred in admitting at trial the taped statement Zakheim made after her arrest as a prior consistent statement. We agree.
In the instant case, the defense theory was that Zakheim told the police that Cortes obtained and brought the cocaine to the drug deal because she wanted to protect her boyfriend, Armando, with whom she had lived for five or six years and who supplied the drugs for her addictions. On cross-examination, Zakheim stated that Armando controlled her life and she did the drug deal at issue because he could not be there and he told her to do it.
The State argued that Zakheim implicated Cortes at the time of her arrest, before she had an opportunity to meet with Armando or to negotiate a plea agreement, and that she continued to implicate Cortes at trial. The State asserted that the taped statement should be admitted as a prior consistent statement to rebut any inference of a recent fabrication.
The admission of prior statements is governed by section 90.801(2)(b), Florida Statutes (1991), which states:
(2) A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is:
* * * * * *
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of improper influence, motive, or recent fabrication....
Zakheim's motive to lie to protect her boyfriend arose at the time of her arrest.[4] Thus, the trial court erred in admitting the taped statement because the statement was not made prior to the time the motive to lie existed. In this regard, we find this case is controlled by Coluntino v. State, 620 So.2d 244, 245 (Fla. 3d DCA 1993) (holding that a prior consistent statement is not admissible where the statement was made after the crime had terminated and victim already had a motive to lie); LeBlanc v. State, 619 So.2d 1021, 1022 (Fla. 3d DCA 1993) (holding inadmissible prior consistent statements not made before the time that the witness's motive to fabricate existed). The cases relied on by the State permit prior consistent statements to rebut defense contentions that favorable plea negotiations have created a *122 recent motivation to lie. Those cases are inapposite to the defense's theory that Zakheim was motivated to lie to protect Armando from the moment the drug deal went sour and she was arrested.
The other points raised by Cortes have no merit.
REVERSED and REMANDED for a new trial.
GODERICH and GREEN, JJ., concur.
GERSTEN, Judge (concurring).
I concur. The right of the defense to cross-examine a key prosecution witness regarding pending charges which might indicate a bias in favor of the State, is a fundamental due process guaranty. This right cannot be limited by the State's claim that there will be no benefit to the witness in connection with the particular case in which he or she is testifying. See Douglas v. State, 627 So.2d 1190 (Fla. 1st DCA 1993); Lewis v. State, 623 So.2d 1205 (Fla. 4th DCA 1993); Bell v. State, 614 So.2d 562 (Fla. 3d DCA 1993).
NOTES
[1] Armando did not take part in the drug transaction because he had to work. Zakheim handled the actual transaction. Armando was neither arrested nor charged in the case.
[2] Her actual sentence was two years community control followed by three years probation, drug treatment, community service, and a $2,000 fine.
[3] The prosecutor did not inform the trial court or defense during the trial below that such an affidavit had been filed against Zakheim just four days before the trial started. We find such conduct by a prosecutor to be totally reprehensible and inexcusable.
[4] The statement given at the time of her arrest was, in fact, more probative for the defense because Zakheim only mentioned Armando once, in passing, as her boyfriend when she was arrested. However, as Zakheim's testimony at trial showed, Armando was deeply involved with this drug deal from the very beginning. Thus, the clear difference between the statement and the trial testimony raised a reasonable inference that Zakheim initially was attempting to protect Armando.